# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| GEORGE ADAM NEWBILL, | * |
| Plaintiff, | * |
| vs. | * CIVIL ACTION NO. 17-00410-B |
| NANCY BERRYHILL,<br>Deputy Commissioner for<br>Operations of the Social<br>Security Administration, | * |
| Defendant. | * |

## ORDER

Plaintiff George Adam Newbill (hereinafter "Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security denying his claim for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq*. On August 16, 2018, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 23). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (Doc. 24). Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **REVERSED** and **REMANDED**.

## I. Procedural History[1]

Plaintiff protectively filed his application for supplemental security income on June 16, 2014, alleging disability beginning December 1, 2013, based on hepatitis C, tonsillitis, stomach acid, weight loss, stomach ulcers, and seizures. (Doc. 12 at 137, 139, 167). Plaintiff's application was denied and upon timely request, he was granted an administrative hearing before Administrative Law Judge Laura Robinson (hereinafter "ALJ") on February 29, 2016. (Id. at 52, 84). Plaintiff attended the hearing with his counsel and provided testimony related to his claims. (Id. at 54-63). A vocational expert also appeared at the hearing and provided testimony. (Id. at 64-66). On May 26, 2016, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 18-35). A second decision unfavorable to Plaintiff was issued by the ALJ on August 24, 2016.[2] The Appeals Council denied Plaintiff's request for review on July 15, 2017. (Id. at 5). Therefore, the ALJ's decision became the final decision of the Commissioner. (Id.).

---

[1] The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF.

[2] The second unfavorable decision is not in the transcript, but it is referenced in the Appeals Council's denial dated July 15, 2017, and in Plaintiff's brief. Plaintiff's assignments of error and the parties' arguments in the present action pertain to the ALJ's May 26, 2016 decision, which Plaintiff classifies as the final decision of the Commissioner. (See Doc. 13 at 1).

2

Having exhausted his administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Issues on Appeal

1. **Whether substantial evidence supports the ALJ's finding that Plaintiff had a medically determinable impairment of substance abuse disorder?**

2. **Whether substantial evidence supports the ALJ's finding that Plaintiff's substance abuse disorder was material to the determination of disability?**

3. **Whether the ALJ reversibly erred by giving little weight to the opinions of Plaintiff's treating physician, Edith Gubler McCreadie, M.D., regarding the side effects of Plaintiff's prescribed medications?**

## III. Factual Background

Plaintiff was born on September 5, 1981 and was thirty-four years of age at the time of his administrative hearing on February 29, 2016. (Doc. 12 at 55). Plaintiff attended special education classes while in school, has an eighth or ninth-grade education, and is able to read and speak English. (Id. at 57, 159, 354). Plaintiff has a limited work history, and last worked as a construction worker in 2010. (Id. at 169, 355). At the hearing, Plaintiff testified that he is unable to work because he has no energy or strength and that he can hardly pick anything up because

3

it "pulls to [his] stomach and [his] back." (Id. at 58). Plaintiff is 5'11 and weighted 140 pounds at the time of his hearing and testified that he had lost approximately twenty pounds in the previous two years due to his diet, ulcers, a liver problem, and "blood disease." (Id. at 55-56, 63). Plaintiff reported stomach ulcers, liver problems, seizures, nerve problems, and depression. (Id. at 58). Plaintiff's gastric ulcers, gastroesophageal reflux disease, and abdominal pain have been treated with a number of medications, including the proton pump inhibitors Protonix, Prilosec, and Nexium. (Id. at 45, 264, 267). Plaintiff reported that he has prescriptions for the opioid pain medications Dilaudid and Oxycodone and is prescribed the benzodiazepine Xanax for anxiety. (Id. at 45, 47, 49, 207). Plaintiff also testified that he had not used drugs or alcohol for two years. (Id. at 61).

**IV. Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the correct legal standards were applied.[3] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the

---

[3] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

4

evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991). "Substantial evidence is more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). In determining whether substantial evidence exists, a reviewing court must consider the record as a whole, taking into account evidence both favorable and unfavorable to the Commissioner's decision. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986) (per curiam); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, at *4 (S.D. Ala. June 14, 1999).

**V.   Statutory and Regulatory Framework**

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. § 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); see also 20 C.F.R. § 416.905(a). The Social Security regulations provide a five-step sequential evaluation

5

process for determining whether a claimant has proven his or her disability. See 20 C.F.R. § 416.920.

The claimant must first prove that he or she is not engaged in substantial gainful activity. Carpenter v. Comm'r of Soc. Sec., 614 F. App'x 482, 486 (11th Cir. 2015) (per curiam). The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. Id. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. Id. If the claimant cannot prevail at the third step, the ALJ must determine the claimant's residual functional capacity ("RFC") before proceeding to step four. Id. A claimant's RFC is an assessment, based on all relevant medical and other evidence, of a claimant's remaining ability to work despite his or her impairments. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Once a claimant's RFC is determined, the evaluation proceeds to the fourth step, where the claimant must prove an inability to perform his or her past relevant work. Carpenter, 614 F. App'x at 486.

If a claimant meets his or her burden at the fourth step, it then becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers

6

in the national economy, given the claimant's RFC, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985) (per curiam). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the burden then shifts back to the claimant to prove his or her inability to perform those jobs in order to be found disabled. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

In addition to the foregoing, the Contract with America Advancement Act of 1996 ("CAAA"), codified as amended at 42 U.S.C. § 423(d)(2)(C) and 1382c(a)(3)(J), "amended the Social Security Act to preclude the award of benefits when alcoholism or drug addiction is determined to be a contributing factor material to the determination that a claimant is disabled."[4] Doughty v. Apfel,

---

[4] The Commissioner's regulations provide the following framework for determining a claimant's disability status in light of the CAAA:

(a) *General.* If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability, unless we find that you are eligible for benefits because of your age or blindness.

(b) *Process we will follow when we have medical evidence of your drug addiction or alcoholism.* (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.

245 F.3d 1274, 1275 (11th Cir. 2001). Therefore, in those cases where the Commissioner "determines a claimant to be disabled and finds medical evidence of drug addiction or alcoholism, the Commissioner then 'must determine whether . . . drug addiction or alcoholism is a contributing factor material to the determination of disability.'" Id. at 1279 (quoting 20 C.F.R. § 404.1535).[5]

---

> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>
> (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. § 416.935.

[5] Drug addiction and alcoholism "cases require an additional layer of consideration. The 'ALJ must first conduct the five-step inquiry without separating out the impact of alcoholism or drug addiction. If the ALJ finds that the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits and there is no need to proceed with the analysis under [20 CFR] §§ 404.1535 or 416.935. If the ALJ finds that the claimant is disabled and there is medical evidence of his or her drug addiction or alcoholism, then the ALJ should proceed under §§ 404.1535 or 416.935 to determine if the claimant would still be found disabled if he or she stopped using alcohol or drugs.'" Green v. Colvin, 2014 U.S. Dist. LEXIS 48625, at *7-8, 2014 WL 1379969, at *3 (S.D. Ga. Apr. 8, 2014) (quoting Price v. Colvin, 2014 U.S. Dist. LEXIS 39989, at *15-16, 2014 WL 1246762, at *5 (D.

Social Security regulations make clear that the "key factor in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability . . . is whether the claimant would still be found disabled if he stopped using drugs or alcohol." Id. (citing 20 C.F.R. § 404.1535(b)(1)). In such materiality determinations, it is the claimant who "bears the burden of proving that his alcoholism or drug addiction is not a contributing factor material to his disability determination." Id. at 1280.

**VI. The ALJ's Findings**

In the instant case, at step one of the five step inquiry, the ALJ determined that Plaintiff had not engaged in substantial activity since his application date. (Doc. 12 at 23). At step two, the ALJ found that Plaintiff has the severe impairments of hepatitis C, gastric ulcers, lumbar disc disease, anxiety disorder, and substance abuse disorder. (Id.). At step three, the ALJ found that Plaintiff's impairments, when considered individually and in combination, do not meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.920(d)). (Id. at 24). The ALJ then

---

Kan. Mar. 26, 2014)), report and recommendation adopted, 2014 U.S. Dist. LEXIS 72721, 2014 WL 2322822 (S.D. Ga. May 28, 2014).

determined "based on all of the impairments, including the substance use disorder, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can perform simple, routine, and repetitive tasks; can make simple, work-related decisions; and is unable, on a sustained basis, to respond appropriately to supervisors and coworkers or deal with changes in routine work setting." (Id. at 25-26). At step four, the ALJ found that Plaintiff cannot perform any of his past relevant work and, at the fifth step, the ALJ concluded that "based on all of the impairments, including the substance use disorder, there are no jobs that exist in significant numbers in the national economy that the claimant can perform[.]" (Id. at 30-31).

The ALJ then performed a second sequential evaluation and made findings premised upon "[i]f the claimant [had] stopped the substance use[.]" (Id. at 31). In this second analysis, the ALJ found at step two that "the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments." (Id.). At the third step, the ALJ determined that in the absence of substance use, Plaintiff would still not have an impairment or combination of impairments that meets or medically equals any of the listed impairments. (Id.). The ALJ then determined that absent substance

10

use, Plaintiff "would have the residual functional capacity to perform light work . . . except the claimant is limited to simple, routine, and repetitive tasks; simple, work-related decisions; occasional interaction with supervisors and coworkers; no direct interaction with the general public; and occasional change in routine work setting." (Id. at 33). At step four, the ALJ found that Plaintiff would "continue to be unable to perform past relevant work[.]" (Id. at 34). At step five, the ALJ determined that in light of the vocational expert's testimony, "there would be a significant number of jobs in the national economy that the claimant could perform" should he stop the substance use, including the occupations of traffic checker, marker, and mail clerk (non-postal). (Id. at 34-35). Because the ALJ concluded that substance use disorder was a contributing factor material to the determination of disability, she concluded that Plaintiff was not under a disability from the date his application was filed through the date of the decision. (Id. at 35).

## VII. Discussion

### A. The ALJ failed to state adequate grounds for her determination that Plaintiff had a medically determinable impairment of substance abuse disorder.

Plaintiff first argues that the ALJ erred in finding that he had, as one of his severe impairments, substance abuse disorder. (Doc. 13 at 6-14). Plaintiff asserts that the record lacks the

11

evidence necessary to support a finding of substance abuse or a maladaptive pattern of substance use. (Id. at 11-14). The Commissioner counters that substantial evidence, including clinical signs, laboratory studies revealing the presence of illegal drugs, and the medical opinion of an examining psychologist that Plaintiff suffered from multiple substance use disorders, supports the ALJ's determination that Plaintiff had a medically determinable impairment of substance abuse disorder. (Doc. 19 at 8-11). Having carefully reviewed the record in this case, the Court finds that the ALJ has failed to provide adequate support for her finding that Plaintiff has a medically determinable substance abuse disorder.

Social Security Ruling 13-2p ("SSR 13-2p") was issued to explain the policies of the Social Security Administration ("SSA") for how it considers whether drug addiction or alcoholism ("DAA")[6]

---

[6] The SSA has noted that "[a]lthough the terms 'drug addiction' and 'alcoholism' are medically outdated, [it] continue[s] to use the terms because they are used in the [Social Security] Act." SSR 13-2p, 2013 SSR LEXIS 2, at *5, 2013 WL 621536, at *3 (S.S.A. Feb. 20, 2013). Drug addiction or alcoholism ("DAA") is a medically determinable impairment, defined by the Social Security Administration as "Substance Use Disorders; that is, Substance Dependence or Substance Abuse as defined in the latest edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM) published by the American Psychiatric Association." SSR 13-2p, 2013 SSR LEXIS 2, at *5-6, 2013 WL 621536, at *3. "In general, the DSM defines Substance Use Disorders as maladaptive patterns of substance use that lead to clinically significant impairment or distress." SSR 13-2p, 2013 SSR LEXIS 2, at *6, 2013 WL 621536, at *3.

is material to its determination of disability. SSR 13-2p, 2013 SSR LEXIS 2, at *1, 2013 WL 621536, at *1 (S.S.A. Feb. 20, 2013). SSR 13-2p "establishes a six step procedure for determining whether a claimant has [DAA], the extent to which the DAA affects the disability determination, and the acceptable evidence to be used in assessing the interaction between the DAA and disability." Wilson v. Colvin, 2016 U.S. Dist. LEXIS 10679, at *12, 2016 WL 362407, at *5 (N.D. Ala. Jan. 29, 2016). Relevant to the issue at bar, the ALJ must determine at the first step of the procedure whether the claimant has DAA. See SSR 13-2p, 2013 SSR LEXIS 2, at *12, 2013 WL 621536, at *5.

> To establish the existence of DAA, there must be:
>
> objective medical evidence – that is, signs, symptoms, and laboratory findings – from an acceptable medical source that supports a finding that a claimant has DAA. This requirement can be satisfied when there are no overt physical signs or laboratory findings with clinical findings reported by a psychiatrist, psychologist, or other appropriate acceptable medical source based on examination of the claimant. The acceptable medical source may also consider any records or other information (for example, from a third party) he or she has available, but [the ALJ] must still have the source's own clinical or laboratory findings.

SSR 13-2p, 2013 SSR LEXIS 2, at *29, 2013 WL 621536, at *10.

Importantly, "[e]vidence that shows only that the claimant uses drugs or alcohol" such as self-reported drug or alcohol use,

a DUI arrest, or a third-party report "does not in itself establish the existence of a medically determinable Substance Use Disorder" because it is not objective medical evidence provided by an acceptable medical source. SSR 13-2p, 2013 SSR LEXIS 2, at *30, 2013 WL 621536, at *10. Further, even when the ALJ has such objective medical evidence, he or she "must also have evidence that establishes a maladaptive pattern of substance use and the other requirements for a diagnosis of a Substance Use Disorder(s) in the DSM[,]" which must come from an acceptable medical source. Id. "A claimant's occasional maladaptive use or a history of occasional prior maladaptive use of alcohol or illegal drugs does not establish that the claimant has a medically determinable Substance Use Disorder." SSR 13-2p, 2013 SSR LEXIS 2, at *7-8, 2013 WL 621536, at *3. Because substance use disorders are diagnosed in part by the presence of *maladaptive* substance use, DAA does not include "[a]ddiction to, or use of, prescription medications taken as prescribed, including methadone and narcotic pain medications." SSR 13-2p, 2013 SSR LEXIS 2, at *7, 2013 WL 621536, at *3.

The undersigned notes at the onset that while Plaintiff often self-reported a history of drug and alcohol abuse, self-reports are not sufficient to establish the existence of a medically determinable substance abuse disorder. A close review of the record evidence reveals two laboratory results reflecting positive

14

tests for drugs. Plaintiff was treated at a local hospital for abdominal pain in July 2013, and the treating doctor, Prince C. Uzoije, M.D. noted that "[t]here is a known history of polysubstance abuse to include cocaine, marijuana and benzodiazepines. This admission his urine drug screen is positive for marijuana." (Id. at 266). After Plaintiff's alleged onset date of December 2013, he was treated again at a local hospital, in May 2014, for abdominal pain. (Id. at 232). Plaintiff reported to George Ngando, M.D. "that he uses illicit drugs (Marijuana)" and that he "does not drink alcohol." (Id. at 233). Plaintiff's urine drug screen tested positive for cannabinoids. (Id. at 236). Dr. Ngando diagnosed Plaintiff with marijuana abuse. (Id. at 234).

In his disability report dated July 14, 2014, Plaintiff reported that he was on five medications, which included Dilaudid, Oxycodone, and Xanax, and that his medications were all prescribed by his primary care physician, Dr. Edith Gubler McCreadie, M.D. (Id. at 170). Also, on September 18, 2014, Dr. Kenneth R. Starkey, Psy.D., a clinical psychologist, conducted a consultative mental examination of Plaintiff. (Id. at 353). During the consultative examination, Plaintiff "reported having a history of past cannabis and alcohol use problems, and what is suspected to be an 8 year history of polysubstance (opioid and benzodiazepine) use problems." (Id. at 354). Plaintiff reported that he had not used marijuana or alcohol since May 2014. (Id.). Dr. Starkey noted

15

that Plaintiff's current medications included Xanax, Dilaudid, Oxycodone, Zantac, and Hydromorphine, and that Plaintiff reported that he had taken his medications prior to the examination. (Id.). Dr. Starkey observed that Plaintiff's "eyes appeared glassy and cognitive processing speed appeared slow (as though he were experiencing the detrimental influence of too much psychoactive substances/medications)." (Id. at 355).

Dr. Starkey's diagnostic impression included the following:

```
995.20    Adverse Affects of Medications
304.30    Cannabis Use Disorder – Early Remission (per
claimants [sic] report)
305.00  Alcohol Use Disorder – Early Remission (per
claimant's report)
Rule Out 300.00 Opioid Use Disorder
Rule Out 304.10 Benzodiazepine Use Disorder
```

(Id. at 356).

Dr. Starkey opined that Plaintiff's ability to carry out simple/concrete instructions appeared adequate, that his ability to work with supervisors, coworkers and the general public appeared marginal, and his ability to deal with work pressures appered marginal to poor. (Id. at 357). Dr. Starkey further opined that "improvement of existing functional limitations might occur with total abstinence from all addictive opioid and benzodiazepine medications." (Id.).

Against this backdrop of evidence, the ALJ found that Plaintiff has a substance abuse disorder, and that the substance abuse disorder is a contributioning factor material to the

16

determination of disability because Plaintiff would not be disabled if he stopped the substance use. (Id. at 23, 35). As an initial matter, the Court notes that there is undoubtedly some evidence that Plaintiff used marijuana during the relevant period. However, the ALJ's decision does not specify whether it attributes Plaintiff's substance abuse disorder to marijuana use, opioid and benzodiazepine use, alcohol use, or a combination thereof. The record establishes that Plaintiff was prescribed addictive opioid and benzodiazepine medications, but it is devoid of any evidence reflecting that Plaintiff was not taking the medication as prescribed.[7] Moreover, Dr. Starkey opined that Plaintiff's existing functional limitations might improve with "total abstinence from all addictive opioid and benzodiazepine medications." (Id. at 357). This opinion clearly suggests that it was the addictive prescription drugs, as opposed to marijuana, that was contributing to the limitations identified by Dr. Starkey. Further, there is precious little in the record concerning Plaintiff's alcohol use, certainly not enough to establish a substance use disorder based on alcohol use. Based on the foregoing, the Court finds that the ALJ's decision is insufficient

---

[7] As noted *supra*, DAA does not include "[a]ddiction to, or use of, prescription medications taken as prescribed, including methadone and narcotic pain medications." SSR 13-2p, 2013 SSR LEXIS 2, at *7, 2013 WL 621536, at *3.

because it fails to state adequate grounds for her determination that Plaintiff has a substance abuse disorder as defined in SSR 13-2p and to "clearly disclose" the grounds upon which she based said determination.  See Wilson v. Colvin, 2016 U.S. Dist. LEXIS 10679, at *14, 2016 WL 362407, at *5 (N.D. Ala. Jan. 29, 2016) (remanding case because "there [was] a substantial likelihood that the evidence relied on by the ALJ would not establish DAA" as defined in SSR 13-2p).  Because of these errors, this case is remanded to the ALJ to conduct the substance use disorder analysis in accordance with SSR 13-2p.[8]

## VIII. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for supplemental security income is hereby **REVERSED and REMANDED** for further proceedings not inconsistent with this decision.

**DONE** this **29th** day of **March, 2019.**

　　　　　　　　　　　　　　　　　　**/s/ SONJA F. BIVINS**
　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**

---

[8] Because this case is being reversed and remanded, the undersigned has not addressed the remaining issues raised in Plaintiff's brief.